Alejos-Perez v. Barr. Ms. Osornio. Thank you. Maria Osornio on behalf of Mr. Alejos-Perez and may it please the court. The present matter regards Mr. Alejos-Perez's conviction for possession of synthetic marijuana and whether the statutes of conviction, Texas Health and Safety Code section 41.1161 and .1031, whether they create a divisible offense that has a federal categorical match under the Controlled Substances Act. I will address three issues. First, that the agency erred in finding that Mr. Alejos-Perez's conviction made him deportable. Second, that the agency applied the wrong analysis in reaching that conclusion. And third, that Texas prosecutes non-generic offenses, thereby satisfying the realistic probability standard in the Fifth Circuit. The parties agree that Penalty Group 2A is overbroad and not a categorical match because Penalty Group 2A criminalizes substances that are not federally controlled. Mr. Alejos-Perez additionally asserts that Penalty Group 2A is indivisible and creates only one offense, regardless of the type of synthetic marijuana in possession. In its de novo review, the before applying the modified categorical approach to an indivisible statute. The agency did this to find facts to justify finding a categorical match to the federal counterpart and support Mr. Alejos-Perez's deportation. Applying the modified categorical approach without doing a divisibility analysis constitutes error. The Supreme Court in DECAP-BUS makes very clear that the divisibility analysis is a gateway to the modified categorical approach. And the divisibility analysis must begin with the reading on its face. On its face, Penalty Group 2A provides lists with examples of synthetic marijuana that can be prosecuted under Penalty Group 2A. In its response brief, the government conceded that Penalty Group 2A lists examples. The Supreme Court in MATHIS-BUS held that if the statutory lists provide examples, then they are providing means to commit the offense and not additional elements to the offense. The legislature's intent for Penalty Group 2A to be indivisible and for the substances that are listed to merely be examples is evident in the catch-all wording of Penalty, or I'm sorry, of Section, Subsection B, which allows for the prosecution of substances that are listed by name. And if they're not listed by name, they can still be criminalized under Penalty Group 2A if they fit into the defined classes. So this means that substances that have not yet been identified or that may not yet exist can be criminalized under Penalty Group 2A. This is because Penalty Group 2A defines chemical structural classes of substances and then uses the phrases including and such as in at least seven different instances throughout the section. And each time these inclusive phrases are used, they are followed by an open-ended list of examples of substances that could be prosecuted under Penalty Group 2A. And also, nowhere in the statute does it indicate that each substance is a distinct offense. And this is in stark contrast to the other penalty groups, which use the limiting phrase of the following, and then have an exhaustive list of identifiable substances. They're listed by their name. So it's for these reasons... Ms. Osorio, what have the Texas courts said about this as it relates to your case? Yeah, so there are... The first case that addresses Penalty Group... that actually addresses Penalty Group 2A is the Carter v. State case, where the Texas Court of Criminal Appeals held that the state has to prove that the respective components of the chemicals are located or attached as they are described in the statute. So this phrase of described in the statute is in contrast to explicitly listed by name, which all of the other penalty groups do. And again, the other penalty groups use that limiting phrase of the following, and then list the substances by name, where Penalty Group lists some substances, but it also is inclusive, over-inclusive, especially because of the subsection B. And in Carter, the Texas Court of Criminal Appeals upheld the sufficiency of evidence for a substance that was not explicitly listed in Penalty Group 2A, and was also not listed on the federal schedules. The case of State v. Mosley also addresses Penalty Group 2A, and in that case, the Texas Court of Criminal Appeals held that merely tracking the statutory language was sufficient for an indictment to provide sufficient notice. And so in Mosley, the indictment identified the cannabinoid receptor, and this is just a fancy and scientific way of saying synthetic marijuana, which is very vague and obviously doesn't identify a specific substance of synthetic marijuana. And in Mosley, the court was persuaded that it was the legislature's intent to prosecute by the inclusive phrases of such as and including. And then lastly, in terms of indivisibility in case law, in the case of Bridges v. State, the defendant there was convicted for one count of possession when he had two different substances that were not explicitly listed in Penalty Group 2A, but that fit into the definition of the chemical compounds. And so both of these substances were prosecuted in the aggregate, and this is in accordance with the weight-oriented penalty provisions, which do not specify that it's substance-specific. And so the agency didn't do any of this divisibility analysis in its finding that the statute is divisible. And so in its finding that the penalty groups are all nearly identical, this was the main structural misreading of the agency. This is because Penalty Group 2A is unlike the other penalty groups because of its inclusive phrasing and because it can identify criminalized substances that are not readily identifiable by name on the list, but also because for this reason, it creates one single offense and not alternative offenses. And so De Camp and Mathis both make clear that it is only if and when state law fails to provide a clear answer that they can rely on other documents to determine divisibility. And so instead of doing this analysis, the agency made the legal statement that if the statute is unclear, it could look straight to the conviction record. And then the agency did what the Sentence Enhancement Analysis forbids, which is that it reviewed the facts of the underlying conviction. Again, Mathis makes clear that the modified categorical approach cannot be used to determine the specific means by which the defendant committed the crime and that factual scenarios remain off-limits to sentencing judges. But considering the means, it was exactly what the agency did here. And then it used the modified categorical approach to review jury instructions that were not used in the underlying conviction to help it determine divisibility. So in other words, the agency didn't do an elements-only analysis, and it inappropriately reviewed the record to help it determine divisibility. And after it identified the substance in question, the agency created a categorical match to the Federal Controlled Substances Act. So this also constitutes reversible error. So Penalty Group 2A is overbroad. It is also not a categorical match, and it also creates only one offense based on the aggregate weight of the various synthetic marijuana compounds. Mr. Tornillo, let me ask you, if I might, what would you ask this court to do? Yeah, I know you want to vacate and send it back, I guess. But give me a little more description of how this plays out. So what we're asking the court is to find that Penalty Group 2A is not divisible. And because it's not divisible, and it is not a categorical match, and it is overbroad, that forecloses removability against Mr. Alejos Perez. Yes, I understand that. If we accept your argument, then what happens? I'm trying to get a sense of where your client is in this process. It goes back, and then what happens? Well, we would try to reopen his immigration case through a remand with the BIA. And then if the BIA decides to send it back to the immigration judge to review his removability. And then what? Suppose you prevailed at all levels, where is your client? I believe he was removed, but at the moment, I believe he's back in the United States. And he would be, would he be then lawfully in the United States if you prevailed? Or does he have further hurdles to clear? I believe the underlying immigration case still has a few more hurdles to clear. Okay, thank you. So, under the Fifth Circuit's strict reading of Castillo-Rivera, the petitioner must show that there is actual prosecution by the state in the non-generic manner in which the statute may read. So, we will point the court back to the case of Carter v. State, where the Texas Court of Criminal Appeals upheld the conviction for the case of Carter v. State. For a substance that was not on the federal schedules, but that was also not explicitly listed in Penalty Group 2A. I'd also note that the statutory language of Penalty Group 2A in and of itself creates the realistic probability of non-generic application. Again, because of the penalty group, or excuse me, because of the subsection B's inclusive wording. And again, and also because it was the intent of the legislature to allow for substances that are not identified to be criminalized. The Supreme Court in Milliview-Lynch also found that despite that the substance in question was criminalized both on the federal schedules and on the state schedules, because the state schedules criminalized nine substances that the federal schedules did not, there was no categorical match, and therefore, removability could not be triggered. And for the Supreme Court, it was the mismatch in elements alone that was sufficient to foreclose removal. Meeting the burden of actual prosecution of non-generic offenses is a high standard for cases like the present one to meet. Penalty Group 2A was created only in 2011, and it was meant for the state to be able to keep up with the quickly changing chemical compounds of synthetic marijuana that would otherwise not be criminalized. But with the Carter case, we have met our Castillo-Rivera standard that there is more than a realistic probability, mere speculation, or legal imagination that the state will apply the statute in the overbroad manner that it reads. And the Texas Courts of Criminal Appeals have upheld this non-generic applicability. And if there aren't any questions, I save the rest of my time for rebuttal. Yes, you saved time for rebuttal, Ms. Osorio. Thank you. Thank you. Ms. Otero? Yes, good afternoon. May it please the Court, Vanessa Otero on behalf of the Attorney General. Your Honors, the only question in this matter is whether Petitioner's statute of conviction, possession of a Penalty Group 2A controlled substance, under Texas law, is divisible, allowing for the application of the Modified Categorical Approach under Mathis. The short answer to that question is yes. The Modified Categorical Analysis reveals that in June 2018, Petitioner was convicted of possessing a federally controlled substance called MMB Fubinaca, and that makes him removable under the INA as an alien convicted of a controlled substance offense. Now, the Texas statute prohibits knowing possession of a controlled substance listed in Penalty Group 2A without a valid prescription. In turn, Penalty Group 2A lists various substances in the alternative. And as has already been discussed, and as this case found in Vetcher, Penalty Group 2A has been found to be overbroad. But that's not where the inquiry ends. Mathis dictates that the analysis proceeds to the Modified Categorical Approach because the Texas statute is divisible. And the reason why Penalty Group 2A is divisible is because by looking at it on its face, it's impossible to know whether the substances listed there in the alternative are means or elements. And that's the whole point of Mathis is getting to that question. Mathis explains that the elements versus means test is easy in two instances. Number one, when the statute on its face provides an answer, which it doesn't here. And secondly, when a state court decision definitively answers the question. And we have that here. The Texas courts have, especially particularly in Watson v. State, a case from the Texas's highest criminal court of appeals held specifically, quote, we hold that the Texas legislature intended to make possession of each individual substance within the same penalty group, a separate and distinct offense, unquote. And at that time, it was referencing all of the statutes, criminalizing possession, manufacture, or delivery of a controlled substance in the Texas Health and Safety Code. At the time, what was the context in which that statement was made? What was the issue before the court? The defendant was arguing that he was being punished twice for the same offense in violation of double jeopardy analysis. Now, what do you say to the cases in which we explicitly said that double jeopardy analysis does not map on to this distinct set of issues that the Supreme Court has given us to verse? Well, I would say that it still doesn't avoid the fact that the Watson court was being very specific in saying that it was analyzing the Texas legislature's intent when drafting the substance offenses under Texas law. And I don't think that we can overlook that language. Now, that language was used and applied in subsequent Texas state court decisions. I don't think that it was in the double jeopardy context. In Nichols v. State, which was cited by the board here, a 2001 decision, the court held that the trial court impermissibly amended the indictment from possession to cocaine to possession of methamphetamine. So even though both substances were in the same penalty group, possession of each individual substance within the same group is a different statutory offense. So the Texas courts of appeals are the ones that have decided the issue are unanimous in your favor on that point, are they not? Yes, Your Honor, they are. It's very clear under Texas law that the legislature and the Texas courts have agreed that possessing the possession of a controlled substance makes it a different offense, no matter what possession statute or other drug offense statute you're applying under Texas law. Did those opinions specifically reference Watson? Yes, Nichols relied on Watson and then Nut v. State, which is the most recent that I could and then it reiterated that same holding the possession of an individual substance in penalty group to a constitutes a different statutory offense, not an alternate method of violating the statute. Yes, but for double jeopardy purposes, what do you say to our unblocked decision in Herald? They said the court therefore concluded the Supreme Court did not list double jeopardy cases when it outlined sources of state law that would answer the question of a divisibility was sufficient, certain, for good reason, it said. And specifically, the opinion said that Texas double jeopardy cases failed to answer the divisibility requirement because the Texas inquiry bottoms out in an examination of the factual differences. Now, that seems to me to be directly contrary to what you're arguing, right or wrong. That's the unblocked decision in Herald. I'm not familiar with that decision, unfortunately, Your Honor, so I can't speak to it. Well, it only went to the Supreme Court twice. Okay, there are other ways that we can get to the answer here, whether there's elements or means and Mathis said if state court cases don't answer the question, you can look directly to the record of conviction if state court decisions don't answer the question. And additionally, the board and the immigration judge also looked at jury instructions, although none were used here to decide the elements versus means issues. And I think the pattern jury instructions provide a very clear answer. The 11th Circuit, I'd like to point out in Guillen was addressing a very similar drug possession statute under Florida law, also looked at Florida state law to find that the controlled substance is an element of the offense and also looked at pattern jury instructions and noted that that was just an authoritative source of state law and then went and looked into the record of conviction. And we also cite in our brief other decisions from other circuits, which have held that the controlled substance is an element of the offense in similarly structured drug possession statutes in other states. So even if we put aside Texas state law that I've cited here, we can look at the pattern jury instructions and Mathis also allows us to take a peek at the record of conviction. And there is information, Mathis dictates that if state doesn't provide an answer, then the court can look at the record of conviction itself. It says that such a peek at the record documents is for the sole and limited purposes of determining whether the listed items are elements. And an indictment under instructions could indicate by referencing one alternative term to the exclusion of all others that the statute contains a list of elements, each of which goes toward a separate crime. And here the indictment lists one element or one substance, MMB Fuminaca, to the exclusion of all others. And if we're applying Mathis, then that means that it's an element of the offense that a jury would have had to agree upon or the prosecution would have had to prove. So as to the state court decisions, Watson was a double jeopardy case, but Nichols and Nutt were not double jeopardy cases, but they, in fact, extended Watson to the non-double jeopardy context. Is that right? Yes, that's correct, Your Honor. There is also a Texas Court of Appeals case from 2004, Ex Parte Exalus, that we cited in our brief that discusses how the Texas legislatures define whether a statute involves one or more offenses. And it speaks to and I'll quote, the legislature defines whether offenses are the same by prescribing the allowable unit of prosecution, which is a distinguishable discrete act that is a separate violation of the statute. And it specifically stated that possession-oriented statutes, such as the one here, in possession-oriented statutes, the prohibited item is the allowable unit of prosecution. And in that case, it cited Watson and Nichols for that purpose and also gave a parenthetical talking about the language that I mentioned earlier, that the controlled substance is an element of the offense rather than a means of committing the offense. Judge Higginbotham, ask Ms. Osorio, where do we go? Where does the BIA go from here if we decide to grant review and remand? What is your view of the status of the case at that point? And what other issues, if there are any, might remain before there's a final resolution? Well, the immigration judge found the petitioner removable on other grounds, and so the board didn't address those. And the board, I think if this court sends it back and disagrees with the board's decision on this one point, then the board would necessarily have to address the second ground of removability and see where we're at then. What were those other grounds? The other ground of removability, I think it was two crimes involving moral turpitude not arising out of a single scheme. He was convicted of theft and then an attempt to take a weapon from a peace officer. But like I said, the board specifically declined to address that because it found that he was removable as having been convicted of a controlled substance violation. Anything else, Ms. Otero? Well, I'd also just like to point out, I don't think that there's a realistic probability test applies here or should be applied. This court was very clear in Vasquez that it limits its scope of review to the analysis made by the board. The board didn't do a realistic probability test because it went to modified categorical because it found that the statute was divisible. And so I don't think that's necessary to go down that road because modified categorical analysis doesn't allow for the realistic probability analysis. Other than that, if there are no further questions, then I will rest on my briefs. All right. Thank you, Ms. Otero. Ms. Assange, you've saved time for your vote. Sorry, just a few points. So initially, the government asserts that the statute is divisible, but the agency did not do a proper divisibility analysis. In terms of the state cases that the Penalty Group 1 and NUTV State deal with Penalty Group 2, which use the limiting phrasing of the following and then provides lists of criminalized substances by their name. So this is in contrast to Penalty Group 2, which, again, merely lists examples of things that could criminalized under Penalty Group 2. And then as the court has pointed out, that was a double jeopardy case. And Penalty Group 2A was not enacted in 2011. So the legislature's intent of the Penalty Group 2A, the wording makes clear that it's meant to be all-inclusive. And the Moseley case actually addresses legislative intent and how it was meant to be very inclusive so that it could criminalize substances that were not explicitly listed. In terms of the jury instructions, those were not used in this case. And the blank in the jury instruction is not determinative of divisibility. And in the Carter case, the Court of Criminal Appeals stated that it was the, how the, how the synthetic compounds, excuse me. That's okay. Take your, take your time. You still have time left. It's not a problem. So the reason that the jury instructions are not determinative in this, in this case is again because the Carter state, Carter case stated that what the state has to prove is that the respective components or chemicals are located or attached as they're described in the statute. So as Carter and then the Moseley case stated that merely saying synthetic cannabinoid receptor was sufficient to identify the substance. So having to fill in the blank in the jury instructions is, isn't really instructive of, of whether the, the statute is divisible. And then one final thing is that the final, the jury instructions are not controlling law in Texas. So those, those jury instructions do change between cases. So accordingly, we ask the court to terminate the immigration proceedings against Mr. Alejo-Spedez or in the, or in the alternative to vacate the BIA's decision and remand to the BIA for further action. Well, we would have to, we would have to remand, would we not? Because there are other remaining issues, isn't that right? I mean, there's, there's no basis on which we would just terminate the proceedings. Although I'm sure your client would like that. That's correct. Yes. There are still issues, other, other grounds that the BIA would have to address, but we would ask that in terms of finding the statute divisible and his conviction for possession of a controlled substance not trigger removability. All right. Thank you, Ms. Misonio. Your case is under submission. Thank you.